IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 23, 2012 Session

## U.S. BANK, N.A., AS SERVICER FOR THE TENNESSEE HOUSING DEVELOPMENT AGENCY v. TENNESSEE FARMERS MUTUAL INSURANCE COMPANY

**Direct Appeal from the Circuit Court for Gibson County**
**No. H3496      Clayburn Peeples, Judge**

**No. W2012-00053-COA-R3-CV - Filed November 29, 2012**

U.S. Bank, N.A. ("Bank") had a mortgage on a residence which was insured against fire loss by Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers"). When the owner of the residence failed to pay the mortgage, the Bank commenced foreclosure proceedings. Thereafter, the owner filed for bankruptcy which stayed the foreclosure proceedings. After the residence was destroyed in a fire, the Bank filed a claim to recover the insurance proceeds. Tennessee Farmers refused to pay the claim. As a result, the Bank filed suit against Tennessee Farmers alleging breach of contract, bad faith refusal to pay an insurance claim, and unfair or deceptive practices under the Tennessee Consumer Protection Act ("TCPA"). The trial court granted partial summary judgment to the Bank, concluding that the Bank's failure to give Tennessee Farmers notice of the foreclosure proceedings did not invalidate the insurance coverage. On appeal to this Court, we reversed, finding that the Bank's commencement of foreclosure proceedings amounted to an increase in hazard under the policy and the Bank's failure to provide notice precluded coverage. After granting the Bank's application for permission to appeal, the Supreme Court reversed the judgment of this Court, and held that commencement of foreclosure proceedings did not constitute an increase in hazard under the terms of the insurance policy or the applicable statutory provisions, and therefore, the Bank was not required to give notice to Tennessee Farmers. *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381 (Tenn. 2009). Subsequently, on remand from the Supreme Court, the trial court entered a judgment in favor of the Bank for the amount due on the mortgage plus accrued interest. The trial court further awarded the Bank attorney's fees and costs based on its finding that Tennessee Farmers' interpretation of the policy, that the Bank was required to provide them with notice of the commencement of foreclosure proceedings, amounted to bad faith and an unfair act or practice under the TCPA. After thoroughly reviewing the record, we reverse and remand.

**Tenn. R. App. P. 3 appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Charles L. Trotter, Jr., Huntingdon, Tennessee, for the appellant, Tennessee Farmers Mutual Insurance Company.

Michael F. Rafferty, Memphis, Tennessee, for the appellee, U.S. Bank, N.A., as Servicer for Tennessee Housing Development Agency.

## OPINION

### I.  Background and Procedural History

The following summary is taken from the Tennessee Supreme Court's previous opinion issued in this case on January 29, 2009:

> This appeal arises out of a dispute between U.S. Bank, N.A. ("Bank"), and Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers"), regarding insurance coverage on a residence which burned while insured against fire loss by Tennessee Farmers.  The Bank had a mortgage on the property and had taken steps to foreclose on the property before the fire loss.  The parties' dispute centers on whether the Bank was required to give notice, pursuant to the terms of the policy, to Tennessee Farmers of the commencement of foreclosure proceedings for coverage of the fire loss.
>
> On February 12, 1999, Jessica Robbins, who later married and was known as Jessica Hill ("the homeowner"), purchased a house in Humboldt, Tennessee.  The Bank financed the home purchase and was designated as the mortgagee for purposes of insurance coverage.  Tennessee Farmers issued the homeowner a personal fire and extended coverage insurance policy, which provided coverage for fire loss.  The policy contained a standard mortgage clause, under which Tennessee Farmers agreed to protect the Bank's interest in the property, and also agreed that the protection afforded the Bank under the policy would not be lost due to acts of the insured homeowner, breach of warranty, increase in hazard, change of ownership, or foreclosure if the Bank had no knowledge of these conditions.  In turn, the Bank was required to notify Tennessee Farmers of "any increase in hazard" of which the Bank had knowledge.  The

policy did not specifically require notification of foreclosure proceedings.

Beginning in August 2000, the homeowner fell behind on her mortgage payments to the Bank. On August 22, 2002, the Bank sent the homeowner a letter notifying her that foreclosure on her residence had started and that this fact had been reported to a credit agency. In a separate letter, also dated August 22, 2002, the Bank informed her that "[d]ue to the status of [her] account, it is necessary to initiate a foreclosure action. The account has been referred to our attorney to begin legal proceedings immediately." Thereafter, on September 5, 2002, the Bank's foreclosure attorney notified the homeowner by letter that her residence was soon to be foreclosed upon. The Bank's lawyer also requested a local newspaper to publish a notice of foreclosure sale. On September 26, 2002, the Bank notified the homeowner by letter that the foreclosure sale was scheduled to take place on November 5, 2002. On October 1, 2002, the homeowner and her husband filed for bankruptcy, which automatically stayed the foreclosure process.

At no point did the Bank notify Tennessee Farmers of the foreclosure proceedings. On April 12, 2003—eight months after the Bank notified the homeowner that foreclosure proceedings were underway and over six months after the foreclosure was stayed by the bankruptcy filing—the insured residence was destroyed by a fire apparently caused by methamphetamine production.

The Bank submitted a claim to Tennessee Farmers seeking to recover the insurance proceeds on the house. Tennessee Farmers refused to pay the claim, prompting the Bank to file suit against Tennessee Farmers on the grounds of breach of contract, bad faith refusal to pay an insurance claim, and unfair or deceptive practices under the Tennessee Consumer Protection Act. The Bank asserted in its complaint that Tennessee Code Annotated section 56–7–804 prohibited Tennessee Farmers from refusing to pay the Bank's claim based on the occurrence of a foreclosure. The Bank later filed a motion for partial summary judgment, arguing that although section 56–7–804 required the Bank to provide notice to Tennessee Farmers of any increase of hazard of which the Bank became aware, the statute did not require the Bank to notify Tennessee Farmers of the commencement of foreclosure proceedings. Tennessee Farmers also filed a motion for summary judgment arguing that section 56–7–804 had no application because its relationship with the Bank was governed by the insurance policy, which required the Bank to notify Tennessee Farmers of foreclosure proceedings as an increase in hazard. Tennessee Farmers

maintained that the Bank's failure to provide such notice voided the Bank's coverage under the policy. Tennessee Farmers also sought summary judgment on the Bank's bad faith and consumer protection claims.

The trial court denied Tennessee Farmers' motion for summary judgment and granted the Bank's motion for partial summary judgment, concluding that the Bank's failure to give the insurer notice of the foreclosure proceedings did not invalidate the insurance coverage. The trial court's order was certified as a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure to enable Tennessee Farmers to appeal the notice issue. The Court of Appeals reversed the trial court, finding that the Bank's initiation of foreclosure proceedings constituted an increase in hazard under both the policy and the applicable statute, section 56–7–804, and that the Bank's failure to notify Tennessee Farmers of the foreclosure proceedings relieved Tennessee Farmers of its obligation to pay under the policy. We granted the Bank's application for permission to appeal to decide whether the commencement of foreclosure proceedings constitutes an increase in hazard for notice purposes under the terms of a standard mortgage clause in an insurance policy. [W]e hold that the commencement of foreclosure proceedings does not constitute an increase in hazard for notice purposes under a standard mortgage clause in an insurance policy or for purposes of section 56–7–804, and therefore, the Bank was not required to give notice to Tennessee Farmers of the commencement of foreclosure proceedings.

*U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 384-86 (Tenn. 2009). On remand from the Supreme Court, the following issues remained: (1) the Bank's breach of contract claim; (2) the Bank's bad faith claim under common law and Tennessee Code Annotated section 65-7-105(a); (4) the Bank's TCPA claims; and (5) Tennessee Farmers' counterclaims against the Bank alleging violation of the TCPA, and policyholder bad faith under Tennessee Code Annotated section 56-7-106.

In October 2010, a trial was conducted in this matter. Thereafter, on May 24, 2011, the trial court entered its findings of fact and conclusions of law. On June 22, 2011, the trial court entered its final judgment in which it awarded the Bank a judgment in the amount of $55,842.90,[1] and attorney's fees and costs in the amount of $342,368.00. Further, the trial court dismissed Tennessee Farmers' counterclaims against the Bank. On July 22, 2011,

---

[1]On May 19, 2010, after receiving an order from the trial court, Tennessee Farmers paid $55,842.90, representing the amount due on the mortgage and accrued interest, into the court to satisfy its obligation under the insurance policy.

Tennessee Farmers filed a lengthy post-trial motion entitled "Motion to Alter, Modify, or Amend Findings of Fact and Conclusions of Law and to Alter or Amend the Judgment in a Non-Jury Case, or Alternatively Motion for a New Trial," in which it argued that the trial court erred in most of its findings of fact and conclusions of law. On October 31, 2011, the trial court denied Tennessee Farmers' post-trial motion. Thereafter, Tennessee Farmers timely filed a notice of appeal to this Court.

## II. Issues Presented

Tennessee Farmers presents the following issues, as restated, for our review:

(1)     Whether the trial court erred by concluding that the Bank was entitled to an award of attorney's fees under the TCPA without any specific finding of a violation of the Act by Tennessee Farmers,

(2)     Whether the trial court erred by concluding that the Bank could recover attorney's fees from Tennessee Farmers based on equitable principles, and that it was entitled to recover attorney's fees as consequential and incidental damages,

(3)     Whether the trial court erred by concluding that the Bank's breach of contract claim was inseparable from its claim under the TCPA,

(4)     Whether the trial court erred by concluding that Tennessee recognizes a common law cause of action for bad faith in failing to settle a claim within the limits of an insurance policy, that such cause of action applied to the present case, and that Tennessee Farmers was liable under a common law claim for bad-faith failure to pay,

(5)     Whether the trial court erred in excluding evidence showing that, prior to the Supreme Court's decision in this case, both the insurance and banking industry considered the commencement of foreclosure an increase in moral hazard, increasing the risk of loss,

(6)     Whether the trial court erred by concluding that there was no evidence or legal authority to support Tennessee Farmers' position, prior to the Supreme Court's decision, that a mortgagee's commencement of foreclosure is an increase in hazard,

(7)     Whether the trial court erred by finding that Tennessee Farmers

identified no facts to support its interpretation, prior to the Supreme Court's decision, that a mortgagee's commencement of foreclosure is an increase in hazard, and that it made a knowing and conscious decision not to inform its policyholders of its interpretation of that effect, and

(8)     Whether the trial court erred in denying Tennessee Farmers' counterclaim against the Bank under the TCPA.

In addition, the Bank presents the following issues, as restated, for our review:

(1)     Whether this Court has jurisdiction because Tennessee Farmers' "Motion to Alter, Modify, or Amend Findings of Fact and Conclusions of Law and to Alter or Amend the Judgment in a Non-Jury Case, or Alternatively Motion for a New Trial" was not a proper motion under Rule 59, and therefore its notice of appeal was untimely, and

(2)     Whether the Bank is entitled to an award of attorney's fees incurred on appeal pursuant to the TCPA.

### III.  Standard of Review

We review the trial court's findings of fact *de novo* on the record, with a presumption of correctness unless the evidence preponderates otherwise.  Tenn. R. App. P. 13(d).  If the trial court fails to make a specific finding of fact on a particular matter, we review the facts in the record under a purely *de novo* standard to determine where the preponderance of the evidence lies.  *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing *Fields v. State*, 40 S.W.3d 450, 457 n. 5 (Tenn. 2001)).  We afford great deference to the trial court's determinations on the credibility of witnesses.  *Hughes v. Metro. Gov't of Nashville & Davidson Co.*, 340 S.W.3d 352, 360 (Tenn. 2011); *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).  We review the trial court's conclusions on matters of law *de novo,* with no presumption of correctness.  Tenn. R. App. P. 13(d).  Likewise, our review of the trial court's application of the law to the facts is *de novo*, with no presumption of correctness. *State v. Ingram*, 331 S.W.3d 746, 755 (Tenn. 2011).

## IV. Analysis

## A. Tennessee Farmers' Post-Trial Motion

We begin by addressing the Bank's argument that Tennessee Farmers' post-trial motion was not a proper motion under Rule 59 of the Tennessee Rules of Civil Procedure. The Bank argues that, since Tennessee Farmers' post-trial motion was improper, its notice of appeal was untimely, and therefore this Court lacks subject matter jurisdiction.

Subject matter jurisdiction involves a tribunal's lawful authority to adjudicate the controversy brought before it. *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000); *First Am. Trust Co. v. Franklin-Murray Dev. Co.*, 59 S.W.3d 135, 140 (Tenn. Ct. App. 2001). This Court may consider subject matter jurisdiction *sua sponte*. Tenn. R. App. P. 13(b); *Ruff v. State*, 978 S.W.2d 95, 98 (Tenn. 1998). This Court lacks subject matter jurisdiction to hear an appeal if the notice of appeal is not timely filed. *First Nat'l Bank v. Goss*, 912 S.W.2d 147, 148 (Tenn. Ct. App. 1995). Pursuant to Rule 4 of the Tennessee Rules of Appellate Procedure, a notice of appeal must be filed within thirty days after the entry of the judgment appealed from. Tenn. R. App. P 4(a). If the Appellant timely files a motion under Rule 59.01 of the Tennessee Rules of Civil Procedure, however, the time for appeal runs from the entry of the order granting or denying such motion. Tenn. R. App. P. 4(b).

As this Court recently explained in *Carbone v. Blaeser*, No. W2012-00670-COA-R3CV, 2012 WL 5503862 (Tenn. Ct. App. Nov. 14, 2012):

> Tennessee Rule of Civil Procedure 59 expressly authorizes four categories of motions: "(1) under Rule 50.02 for judgment in accordance with a motion for a directed verdict; (2) under Rule 52.02 to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (3) under Rule 59.07 for a new trial; or (4) under Rule 59.04 to alter or amend the judgment." Tenn. R. Civ. P. 59.01. Furthermore, the specified motions are the only means "for extending the time for taking steps in the regular appellate process." *Id.*; *see also* Tenn. R. App. P. 4(b).

> Rule 59.02 provides that "[a] motion for new trial and all other motions permitted under this rule shall be filed and served within 30 days after judgment has been entered in accordance with Rule 58." Tenn. R. Civ. P. 59.02. "The purpose of Tenn. R. Civ. P. 59 motions is to prevent unnecessary appeals by providing the trial courts with an opportunity to correct errors before a judgment becomes final." *Bradley v. McLeod*, 984 S.W.2d 929, 933

(Tenn. Ct. App. 1998), overruled on other grounds by *Harris v. Chern*, 33 S.W.3d 741, 744 (Tenn. 2000). Thus, for thirty days after entry of a final judgment, motions for relief should be premised upon Rule 59.

*Id.* at *2.

We emphasize that the propriety of the trial court's decision denying Tennessee Farmers' post-trial motion is not at issue on appeal. Instead, we must determine whether Tennessee Farmers' motion was one recognized under Rule 59. In essence, the Bank argues that Tennessee Farmers' motion was a motion to reconsider the judgment which is not contemplated by the Rules. Even if this were so, our courts may construe a motion to reconsider as a motion to alter or amend under Rule 59.04.[2] *See McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 795 n.4 (Tenn. Ct. App. 1997) ("The Tennessee Rules of Civil Procedure do not authorize 'motions to reconsider.' We construe this motion to be a motion to alter or amend pursuant to Tenn. R. Civ. P. 59.04."). Further, as noted above, Tennessee Farmers' post-trial motion was entitled "Motion to Alter, Modify, or Amend Findings of Fact and Conclusions of Law and to Alter or Amend the Judgment in a Non-Jury Case, or Alternatively Motion for a New Trial." Thus, even on the face of its motion, Tennessee Farmers clearly sought relief under Rule 52.02[3] and Rule 59.04. Moreover, regardless of the strict formality of Tennessee Farmers' motion, we must look to the substance of the motion. *See Tenn. Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998) ("[W]hen determining whether a post-trial motion is one of those designated by the rules of civil and appellate procedure as tolling commencement of the time for filing a notice of appeal, courts must consider the substance of the motion, rather than its form."). In its post-trial motion, Tennessee Farmers asked the trial court to correct erroneous

---

[2]"The purpose of a Rule 59.04 motion to alter or amend a judgment is to provide the trial court with an opportunity to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). A motion to alter or amend should "be granted when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice." *Id.* These motions, however, "should not be used to raise or present new, previously untried or unasserted theories or legal arguments." *Id.*

[3]Rule 52.02 of the Tennessee Rules of Civil Procedure provides:

Upon motion of a party made not later than 30 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may be made with a motion for a new trial pursuant to Rule 59. When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may be raised on appeal whether or not the party raising the question has made in the trial court an objection to such findings or has made a motion to amend them or a motion for judgment.

evidentiary rulings, correct factual rulings that were contrary to the weight of the evidence presented, and correct substantive legal errors. Although the Bank takes issue with the fact that Tennessee Farmers challenged most of the trial court's rulings in its post-trial motion, we see no reason why this alone would remove it from the purview of Rule 59. Accordingly, after thoroughly reviewing the record, we conclude that Tennessee Farmers' post-trial motion was a proper motion under Rule 59. Because Tennessee Farmers' timely filed its post-trial motion, and timely filed a notice of appeal after the trial court denied its post-trial motion, this Court has subject matter jurisdiction to hear this appeal.

## B. Trial Court's Ruling

Finally, we must address the trial court's award of attorney's fees and costs in favor of the Bank. The trial court based its award of attorney's fees on its finding that Tennessee Farmers' interpretation of the policy, that the Bank was required to provide them with notice of the commencement of foreclosure proceedings, amounted to bad faith and an unfair act or practice under the TCPA.

In its findings of fact and conclusions of law, the trial court stated:

The Tennessee Supreme Court's ruling in this case is consistent with the position US Bank has taken throughout the entire pendency of this case, whereas, the position taken by [Tennessee Farmers] is not consistent with the law, past or present. The record contains no facts to support [Tennessee Farmers'] position, nor its privately held interpretation of its own policy in a way different from what others dealing with [Tennessee Farmers] would assume a correct interpretation to be. Nor did [Tennessee Farmers] make any effort to notify any of its policyholders of its unique interpretation of a commonly understood term.

[Tennessee Farmers'] unwritten interpretation of the standard mortgage clause in the policy under consideration in the instant case is inconsistent with the accepted meaning of the term "increase in hazard." . . . .

[Tennessee Farmers'] interpretation of its policy is contrary to the plain language of Tenn. Code Ann. Sect. 56-7-804, and it is not supported by the language of the policy itself, nor by any evidence brought forth in this case or by any rule of law offered.

. . . .

Despite the lack of legal precedent in Tennessee to support the position taken by [Tennessee Farmers] in this case, it refused to pay US Bank's claim, forcing US Bank to commence the present lawsuit. In pursuing its lawful interests in prosecuting its claim for breach of contract and its request for declaratory judgment, the court finds that every action taken by US Bank was necessary and inseparable from the prosecution of its claim under the TCPA.

US Bank's action to compel [Tennessee Farmers] to pay its claim as a mortgagee under the standard mortgage clause was also an action to prosecute claim under the TCPA that [Tennessee Farmers] was guilty of an unfair or deceptive act or practice. The proof for both was identical, and US Bank's actions in prosecuting both claims cannot be separated in any meaningful way.

. . . .

[Tennessee Farmers'] interpretation of its own standard mortgage clause in the policy issued in the present case appears to have been based solely and entirely upon the subjective opinions of its underwriters as to what the law ought to be, as opposed to what it is, without regard and with indifference to, long-settled and fundamental rules of law applicable to insurance policies in Tennessee, and it did so without notifying its policy holders of its interpretation.

There is no basis in law or in the facts of this case, for [Tennessee Farmers] to argue, or for the court to conclude, that [Tennessee Farmers] was acting in good faith in handling this fire loss claim by US Bank as a mortgagee under the standard mortgage clause issued in the present case. The court finds that what should have been an ordinary fire loss claim became protracted and expensive litigation only because of [Tennessee Farmers'] insistence on interpreting its policy in a legally incorrect way. [Tennessee Farmers'] argument essentially was that a mortgagee *should* be required, as a matter of public policy, to give notice to an insurer when it commences foreclosure proceedings, irrespective of the fact that neither the law, nor the language of the policy requires such notice. [Tennessee Farmers] asks this court to fill in what it considers insufficiencies in the statutory law of the state and its own policy. The court cannot do that, especially given the following statement by the Tennessee Supreme Court in the present case: "[W]e decline to read into this policy an obligation to notify the insurer of the commencement of foreclosure. In our view, the insurer is essentially asking us to write new a contract for the parties in accordance with its idea of what the policy should have said. This we decline to do, as our duty is to construe and enforce the

-10-

policy as written, and not to make a new contract for the parties on different terms."

. . . .

Simply stated, the interpretation [Tennessee Farmers] would have the court adopt regarding interpreting the personal fire insurance policy in the present case is inconsistent with accepted understanding of what constitutes an "increase in hazard" for purposes of a standard mortgage clause.

. . . .

Under the circumstances of the present case, US Bank is entitled to recover its attorney's fees as an element of damages for [Tennessee Farmers'] delay in paying US Bank's legitimate claim under the standard mortgage clause and for compelling US Bank to enforce the terms of this standard mortgage clause through a protracted series of legal maneuvers.

. . . .

The essential purpose of hazard insurance is to protect a person who has an ownership interest in property from damage to that property. By purchasing hazard insurance coverage from [Tennessee Farmers], US Bank had a right to expect to be protected from casualty losses such as the fire that occurred on April 12, 2003, and to further expect it would not have to spend hundreds of thousands of dollars to obtain that protection. US Bank's damage (its "ascertainable loss of money or property" under the TCPA) viz [Tennessee Farmers], was [Tennessee Farmers'] failure to protect US Bank's interest in the property by refusing to pay US Bank's claim.

. . . .

Consequently, US Bank is entitled to a judgment for its damages that were proximately caused by [Tennessee Farmers'] breach of contract in the present case, those damages to include the principal unpaid balance on the mortgage-loan, interest and all consequential and incidental damages US Bank has incurred due to [Tennessee Farmers'] six year delay in paying this claim under the standard mortgage clause.

In the alternative, the court finds that US Bank is entitled to an award of

attorneys' fees under the TCPA, and since its claim for breach of contract was identical to, or at least based upon the same set of facts, US Bank's attorneys' fees cannot be meaningfully separated, and US Bank is entitled to a judgment for all its attorneys' fees and all other expenses incurred in prosecuting this case.

. . . .

The defendant, [Tennessee Farmers], argues that it has a right to challenge claims that are questionable, arguable or fairly debatable as to either matters of law or fact without being subject to a bad-faith claim, and so it does. Whether a claim is fairly debatable, however, depends upon whether a reasonable insurer under the circumstances would have denied payment based upon the information available to it at the time of the denial. This court finds that a reasonable insurer would not have done so in this case.

. . . .

US Bank has shown by a preponderance of the evidence the following elements of a common law claim for a bad-faith failure to pay:

> a. That [Tennessee Farmers] issued a policy of insurance to US Bank and that US Bank made lawful, reasonable claim under that policy;

> b. That [Tennessee Farmers] intentionally refused to pay US Bank's claim;

> c. That [Tennessee Farmers] had no reasonably legitimate or arguable reason for its refusal to pay the claim;

> d. That [Tennessee Farmers] had actual knowledge of the absence of a reasonably legitimate, debatable or arguable reason for the refusal; and

> e. That [Tennessee Farmers] intentionally failed to determine whether it had a reasonably legitimate or arguable reason for refusing to pay US Bank's claim.

See American Jurisprudence 2d, Insurance Sect. 1736

In refusing to pay this claim, [Tennessee Farmers] relied upon an unwritten

and undisclosed interpretation of its own policy, a policy it could have easily made clear and consistent with [Tennessee Farmers'] inaccurate interpretation of it. This refusal to pay US Bank's lawful claim has caused US Bank to incur unnecessary and additional expense, loss and injury, including attorneys' fees.

We respectfully disagree with the trial court's conclusion that Tennessee Farmers' interpretation of the policy throughout the litigation amounted to bad faith and an unfair act or practice under the TCPA. As noted by the Supreme Court, the issue of whether, under a standard mortgage clause in a fire insurance policy, the Bank's commencement of foreclosure proceedings amounted to an increase in hazard requiring notification to Tennessee Farmers involved "a matter of first impression." *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381 (Tenn. 2009). The Supreme Court further noted that "no Tennessee case has squarely addressed the precise issue presented . . . ." *Id.* at 388. Moreover, prior to the Supreme Court's opinion, this Court agreed with Tennessee Farmers' interpretation of the policy. Clearly, reasonable minds disagreed over the precise issue which the trial court claimed to be well-settled. In fact, had the Supreme Court agreed with the position taken by this Court, there would be no basis for the trial court's reasoning that Tennessee Farmers' interpretation was unreasonable and inconsistent with well-settled law. Absent the use of hindsight and the retroactive application of the Supreme Court's ruling, the trial court failed to provide, and we are unable to find, any other basis to conclude that Tennessee Farmers acted in bad faith and in violation of the TCPA. Accordingly, we reverse the judgment of the trial court. Furthermore, we find no merit in Tennessee Farmers' contention that the trial court erred in denying its counterclaim against the Bank under the TCPA. All other issues in this cause are pretermitted.

## V. Conclusion

For the forgoing reasons, we reverse the judgment of the trial court and remand for further proceedings consistent with this Opinion. Costs of this appeal are taxed to the Appellee, U.S. Bank, N.A., as servicer for the Tennessee Housing Development Agency, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE